**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JUANA SALLIS,            ) | |
|            ) | |
|       Plaintiff,      ) | |
|            ) | |
|    v.          ) | CASE NO.:  07-CV-2911 |
|            ) | |
| PORTFOLIO AMBASSADOR EAST, LLC,   ) | Judge Robert M. Dow, Jr. |
| d/b/a/ AMBASSADOR EAST HOTEL,   ) | |
|            ) | |
|       Defendant.     ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Juana Sallis ("Sallis") filed a complaint against Defendant Portfolio Ambassador

East, LLC ("Portfolio") under Title VII of the Civil Rights Act of 1964, alleging that (1) she was

subjected to a hostile work environment while employed by Portfolio at the Ambassador East

Hotel in Chicago when she was sexually harassed by two supervisors in violation of 42 U.S.C. §

2000e-2(a)(1); and (2) that Portfolio discharged her in violation of the anti-retaliation provisions

of 42 U.S.C. § 2000e-3 because she complained about the sexual harassment.[1]  On February 5,

---

[1]  The "Jurisdiction and Venue" statement in Plaintiff's complaint indicates that, in addition to claiming
relief under 42 U.S.C. §§ 2000e-2 and 2000e-3, "this is also a claim under the Age Discrimination in
Employment Act, 29 U.S.C. 621. et. seq. and the Americans with Disabilities Act."  Compl., ¶ 1.
However, because the "Statement of Claim" in Plaintiff's complaint alleges only sex discrimination and
retaliatory discharge under 42 U.S.C. 2000e-2(a)(1) and 2000e-3, and because Plaintiff's Answer Brief

2008, Portfolio filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure [42], asserting that (1) Portfolio was not Sallis's employer when the alleged sexual harassment took place or when Sallis complained of the harassment; and (2) Portfolio could not have discharged Sallis in retaliation for her sexual harassment complaint because it was not aware of such a complaint when the decision to discharge her was made.

On December 15, 2005, Omni Hotels Management Corporation ("Omni") sold the Ambassador East Hotel to Portfolio. Portfolio has filed a third-party complaint against Third-Party Defendant Omni alleging that Omni has breached its contractual duty to indemnify Portfolio pursuant to an indemnification clause in the purchase and sale agreement between the parties regarding transfer of the Ambassador East Hotel. Portfolio seeks defense costs and indemnification with regard to Sallis's claim. Omni also has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure [47], asserting that Omni has a duty to indemnify Portfolio only for Omni's actions occurring prior to December 15, 2005, and that Sallis's claim does not relate to any of Omni's actions prior to December 15, 2005.

For the following reasons, the Court denies Defendant Portfolio's 12(c) motion for judgment on the pleadings [42]. The Court denies in part and grants in part Third-Party Defendant Omni's 12(c) motion for judgment on the pleadings [47].

---

states that she seeks relief only for "gender discrimination (sexual harassment) and under the anti-retaliation proscription of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a)(1) and 2000e-3," the Court construes Plaintiff's complaint as only attempting to raise those claims.

## I.      Standard of Review

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed.   Fed.R.Civ.P. 12(c).   Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss.  *Piscotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).   Therefore, when a defendant moves for judgment on the pleadings, the plaintiff's complaint must satisfy two conditions.   First, "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).   Second, its allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level."  *Id.*   In making that determination, the court construes the complaint in the light most favorable to the plaintiff, taking the facts alleged to be true and drawing all possible inferences in her favor.  See *Piscotta*, 499 F.3d 633; *Tamayo*, 526 F.3d at 1081.

As a preliminary matter, this Court also must determine which facts are to be evaluated as part of the "pleadings" for consideration under a Rule 12(c) motion.   For purposes of a Rule 12(b)(6) motion, the Seventh Circuit has held that the pleadings "consist generally of the complaint, any exhibits attached to, and supporting briefs."   *Thompson v. Ill. Dept. of Professional Regulations*, 300 F.3d 750, 753 (7th Cir. 2002).   More specifically, "the facts asserted in the memorandum filed in opposition to the motion to dismiss, but not contained in the complaint, are relevant to the extent that they could be proved consistent with the allegations." *Evans v. U.S. Postal Service*, 428 F. Supp. 2d 802, 805 (N.D. Ill. 2006) (quoting *Dausch v. Ryske*, 52 F.3d 1425, 1428 n. 3 (7th Cir. 1994)).   Because a Rule 12(c) motion operates

according to the same standards as a Rule 12(b)(6) motion, this Court will consider facts presented in Plaintiff's brief in opposition to the Rule 12(c) motion as part of the "pleadings" if those facts are consistent with the allegations in the complaint.

## II.    Plaintiff's Claims Against Portfolio

### A.    Factual Background[2]

Plaintiff Juana Sallis had been employed as a housekeeper at the Ambassador East Hotel in Chicago, Illinois, since May 3, 2000, and had satisfactorily performed the duties of her job. On November 23, 2005, Plaintiff was notified by a co-worker that another employee, Larry Cason, accused her of engaging in sexual acts with him. The hotel was then owned by Third-Party Defendant Omni.[3] Plaintiff reported the incident to human resources director Elvia Munoz. Munoz and other members of the hotel management staff, including general manager Paul Lauritzen and executive housekeeper Bill Smith, "failed to take any action against Cason to have him cease and desist from engaging in his sexually offensive and derogatory behavior." Compl., Ex. A-2.[4] As a result, Plaintiff's work environment became "hostile, egregious, outrageous, and offensive" and "severely affected [her] ability to perform the essential duties of her job." *Id.*

On December 15, 2005, Omni sold the Ambassador East Hotel to Portfolio. After the

---

[2] Plaintiff alleges the following facts, which are assumed to be true for the purposes of this Rule 12(c) motion.

[3] Facts regarding the ownership of the Ambassador East Hotel, while initially raised by Defendant Portfolio in its Rule 12(c) motion, are conceded by Plaintiff in her supporting brief. Therefore, the Court accepts them as true for purposes of the motions before the Court at this time.

[4] Plaintiff's allegations regarding Bill Smith and Paul Lauritizen, specifically, appear in her supporting brief, not in her complaint. However, since these allegations are consistent with the more general allegation in her complaint that members of Portfolio's management failed to respond to her initial report of sexual harassment, the Court accepts them as part of her pleadings.

transfer in ownership, Portfolio retained most of Omni's hotel staff.[5]  On December 23, 2005, Plaintiff asked permission of her supervisors, Linda Smith and Ricardo Perez, to leave early, and she was authorized to do so as long as she signed out, which she did.  Compl., Ex. A-3; Pl. Ans. at 4.[6]  On December 30, 2005, Plaintiff was discharged from her job as a housekeeper at the Ambassador East Hotel by Paul Lauritizen, Bill Smith, and Portfolio human resources director Linda Noriega.  Plaintiff was told that she was being discharged because she left work early on December 23, 2005.  Plaintiff did not receive any documentation validating the reason for her discharge.

On April 4, 2006, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC").  On March 1, 2007, the EEOC issued a "right to sue" letter authorizing Plaintiff to sue under Title VII within ninety days.  Plaintiff filed this lawsuit against Portfolio on May 24, 2007.

**B.**     **Discussion**

Portfolio moves for judgment on the pleadings as to Plaintiff's allegations of hostile work environment sexual harassment and unlawful retaliation under Title VII.  Portfolio argues that Plaintiff cannot establish a prima facie sexual harassment claim and that, in any event, Portfolio could not be held liable because it had no notice of the harassment, which occurred before it purchased the Ambassador East Hotel.  Portfolio further contends that Plaintiff cannot establish a

---

[5]  Plaintiff's allegations that Portfolio retained most of the staff of the Ambassador East Hotel after the transfer appear in her supporting brief, not in her complaint.  However, since these allegations are consistent with the allegations in her complaint that persons now employed by Portfolio participated in both the response to her sexual harassment report before the hotel sale and her discharge after the hotel sale, the Court accepts them as a part of her pleadings.

[6]  Plaintiff's allegation that she had permission from her supervisors to leave work early appears in her supporting brief, not in her complaint.  However, since this allegation is consistent with the general allegation in her complaint that Portfolio failed to show a valid reason for her discharge, the Court accepts it as a part of her pleadings.

retaliation claim because Portfolio was not aware of Plaintiff's harassment complaint when it decided to fire her and because Plaintiff was fired for legitimate reasons.

<em>1.    Hostile Work Environment Claim</em>

Title VII, in relevant part, provides that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In *Meritor Savings Bank v. Vinson*, the Supreme Court held that sexual harassment that creates a hostile work environment constitutes discrimination based on sex that alters the terms, conditions, or privileges of employment in violation of Title VII. 477 U.S. 57, 66-67 (1986). In order to establish a prima facie case of a hostile work environment, a plaintiff must show that: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability. *Parkins v. Civil Contractors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Portfolio argues that Plaintiff's allegations do not establish a prima facie case of hostile work environment sexual harassment. However, to survive a Rule 12(c) motion, as with a Rule 12(b)(6) motion, an employment discrimination plaintiff need not plead a prima facie case. See *Swierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002). Indeed, applying the Rule 12(b)(6) standard to this motion, "a plaintiff alleging employment discrimination may allege these claims quite

generally." *Tamayo*, 526 F.3d at 1081. "Even after [*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)], * * * a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of sex." *Id.* at 1084. "The complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Id.* at 1085.

In *Tamayo*, the Seventh Circuit denied a 12(b)(6) motion to dismiss a plaintiff's sex discrimination claim when

> [s]he alleged facts regarding her promised and actual salary, as well as the salaries of other similarly situated male employees. She stated her belief that she was paid less than the similarly situated male employees * * * 'because she was a woman.' She further alleged that she 'has been subjected to adverse employment actions by Defendants on account of her gender,' and she listed specific adverse employment actions. She stated that 'Defendants have treated Plaintiff differently than similarly situated male employees and exhibited discriminatory treatment against Plaintiff in the terms and conditions of her employment on account of Plaintiff's gender.' Finally, she stated that she filed two EEOC charges alleging sex discrimination and that she was issued a right-to-sue notice.

526 F.3d at 1085. Likewise, in this case, Plaintiff has alleged that she is female. She has alleged a specific employee was accusing her of "engaging in sexual acts" in a manner that she believed was "sexually harassing, offensive, egregious, and outrageous." Compl., Ex. A-2. She has alleged that she reported the harassment to human resources director Elvia Munoz and that Munoz and other hotel managers "failed to take any action" to cure the "sexually offensive and derogatory behavior." *Id.* She alleged that, as a result, her work environment "became hostile * * * and severely affected [her] ability to perform the essential duties of [her] job." *Id.* Under the minimal standards described in *Tamayo*, these allegations are sufficient to give Portfolio fair notice of the claim such that it can investigate and prepare a defense.

The next inquiry on this Rule 12(c) motion is whether Plaintiff's allegations of hostile work environment sexual harassment, taken as true, plausibly raise the possibility of relief above

the speculative level. Portfolio argues that the harassment alleged by Plaintiff cannot constitute an actionable Title VII violation for several reasons. First, Portfolio argues that Plaintiff "was not subjected to unwelcome verbal or physical conduct of a sexual nature" because "there is no evidence that [co-employee Larry Cason] made any verbal comment to [Sallis]" and "there is no evidence that Mr. Cason had any physical contact with [Sallis]." Def. Rep. at 4. Portfolio also argues that Plaintiff "cannot prove that the alleged harassment was sufficiently severe or pervasive enough to alter the conditions of her employment" because she did not report to management that she was unable to perform her duties or ask to be re-assigned to a different department. *Id.* at 4-5.

However, Portfolio does not cite any authority establishing that, as a matter of law, unwelcome verbal conduct must be transmitted directly to the plaintiff from the instigator, and not through a third party or written medium, in order to constitute sexual harassment. Furthermore, the nature and severity of the conduct alleged, the extent to which it affected Plaintiff's ability to do her job, and whether Plaintiff took reasonable steps – such as reporting any difficulties in performing her duties to management or asking to be re-assigned – are factual and evidentiary matters more appropriately considered at summary judgment or trial than at the pleadings stage. Plaintiff will need to produce evidence to support her claims in order to ultimately prevail, but "a complaint need not allege all, or *any*, of the facts logically entailed by the claim, and it certainly need not include evidence." *Tamayo*, 526 F.3d at 1081. It is plausible that unwelcome comments of a sexual nature made about an employee behind her back may create a work environment that is hostile and not conducive to the performance of job duties. Consequently, Plaintiff's allegations for sexual harassment in this regard survive the Rule 12(c) motion.

The remaining issue is whether Plaintiff's complaint plausibly suggests that Portfolio could be liable for the alleged harassment.  When an employee is harassed by a co-worker, employers can be held liable only if they have been negligent in either discovering or remedying the harassment.  *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997).  Plaintiff alleges that her employer at the Ambassador East Hotel failed to recognize that she had been harassed despite her claim of a witness account of the harassment and that her employer failed to take any action to cure the harassment.  However, Omni, not Portfolio, was Plaintiff's employer when the harassment occurred.  So, taken as true, Plaintiff's allegations plausibly may suggest that Omni was negligent in discovering and remedying the harassment.  But Portfolio could not have been negligent in discovering and remedying the harassment because it was not Plaintiff's employer at the time the alleged harassment took place.

Even so, this Court cannot conclude, as a matter of law, that Portfolio could not be liable for the harassment alleged by Plaintiff because of the doctrine of successor liability.  Under that doctrine, a purchaser of the assets of a predecessor's business may be liable for the predecessor's employment discrimination when (1) the successor had notice of the employment discrimination claim before the acquisition; and (2) there is substantial continuity of business operations before and after the sale.  *E.E.O.C. v. G-K-G, Inc.*, 39 F.3d 740, 747-48 (7th Cir. 1994).  The Seventh Circuit has upheld the application of the doctrine of successor liability in employment discrimination cases based on three considerations:  (1) an overriding federal policy against unfair and arbitrary employment practices; (2) the victim of illegal employment practices is helpless to protect her rights against an employer's change in the business; and (3) the successor can provide relief at minimum cost.  *Musikiwamba v. EESI, Inc.*, 760 F.2d 740, 748 (7th Cir. 1985).

Portfolio maintains that it had no notice of Plaintiff's sexual harassment claim until she filed a formal charge with the IDHR and EEOC in April 2006, particularly since Omni's investigation deemed the claim unfounded prior to its transfer of the Ambassador East. However, whether and when Portfolio had notice of the harassment is a question of fact that is not appropriately resolved based on the pleadings, especially since relevant facts regarding communications between Omni and Portfolio are likely beyond Plaintiff's purview prior to discovery. Plaintiff's allegations establish that Omni had notice of her complaint prior to the transfer of the Ambassador East Hotel to Portfolio. It is plausible that this information could have been communicated to Portfolio prior to the transfer, especially since, under normal due diligence principles, "the burden would be on the successor to find out from the predecessor all outstanding potential and actual liabilities" in order to avoid successor liability. See *Musikiwamba*, 760 F.2d at 751.

Furthermore, based on Plaintiff's allegations, there was substantial continuity of business operations at the Ambassador East Hotel before and after its transfer from Omni to Portfolio. Continuity depends on such factors as whether the business uses the same premises, the same jobs, the same work force, and the same supervisory personnel and provides the same service. See *Wheeler v. Synder Buick, Inc.*, 794 F.2d 1228, 1236 n. 7 (7th Cir. 1986). Here, it is undisputed that the Ambassador East Hotel continued to operate at the same location after it was sold to Portfolio, and Plaintiff alleges that most of the employees, including members of the management staff, continued to work at the hotel after its transfer to Portfolio.

The allegations in Plaintiff's complaint, taken as true, plausibly suggest that she was subject to sexual harassment that created a hostile work environment while she was employed as a housekeeper at the Ambassador East hotel. Furthermore, even though Portfolio was not her

10

employer at the time, Plaintiff's allegations are sufficient to raise the possibility above a speculative level that Portfolio could be liable for any sexual harassment she faced under the doctrine of successor liability. Therefore, Portfolio's 12(c) motion for judgment on the pleadings as to Plaintiff's hostile work environment claim is denied.

### 2. *Retaliation Claim*

Plaintiff also claims that her discharge from Portfolio on December 30, 2005, constituted unlawful retaliation for her complaint of sexual harassment in violation of Title VII. Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. In order to establish a prima facie case of unlawful retaliation, a plaintiff must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. See *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). Again, it is not necessary for a plaintiff to establish a prima facie case at the pleadings stage. See *Swierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002). In any case, as explained below, Plaintiff has pleaded adequately all the elements of a retaliation claim to avoid judgment on the pleadings.

First, the Court is not persuaded by Portfolio's argument that Plaintiff's retaliation claim should fail because "there was no sexual harassment." Def. Rep. at 7. Title VII prohibits employers from retaliatory action against employees who make complaints of sexual harassment, even if those complaints ultimately have no merit. "The complaints themselves are protected speech under Title VII's terms, meaning an employee may complain (in good faith) without the

added burden of having to be right." *Sweeney v. West*, 149 F.3d 550, 554 (7th Cir. 1998). Thus, even if Plaintiff's hostile work environment claims do not ultimately prevail, her retaliation claim, which relates to her right to oppose perceived unlawful behavior without fear of repercussion, must be evaluated independently.

Plaintiff's claims are adequate to give Portfolio fair notice of the nature of the claims against it such that it can prepare a defense. In *Tamayo*, the Seventh Circuit found that the plaintiff's retaliation allegations gave sufficient notice to survive a Rule 12(b)(6) motion when the plaintiff alleged that (1) she had performed her job satisfactorily; (2) she filed EEOC charges against the defendant and was issued a right-to-sue notice; (3) she had complained about unequal pay; and (4) she had been subject to specific adverse employment actions in retaliation for her complaints. Here, too, Plaintiff alleges that she "satisfactorily performed her duties as Housekeeper" for Portfolio. Compl., Ex. A-1. She alleges that she filed an EEOC charge against Portfolio and obtained a right-to-sue letter. Compl., Ex. A at ¶ 3. She asserts that she "filed a sexual harassment complaint with * * * [Elvia] Munoz, Respondent's Human Resource Manager." Compl., Ex. A-4. Finally, she alleges that she suffered a specific adverse employment action, namely, that she was "discharged because she opposed practices made unlawful by [Title VII]." Compl., Ex. A at ¶ 4. Therefore, applying the same Rule 12(b)(6) standard to this Rule 12(c) motion as was applied in *Tamayo*, Plaintiff's pleadings are sufficient to give Portfolio fair notice of her claim.

The Court next considers whether Plaintiff's allegations of retaliation plausibly raise the possibility of relief above the speculative level. Portfolio argues that Plaintiff cannot possibly establish a causal link between her harassment complaint and her discharge because Portfolio had no knowledge of the complaint when it made the decision to discharge her. Portfolio argues

that Plaintiff complained only to Omni human resources director, Elvia Munoz, before Portfolio purchased the Ambassador East Hotel. Portfolio also argues that, because Omni had investigated the complaint and deemed it baseless before the hotel sale to Portfolio, there would have been no reason for Munoz or anyone else who knew about the complaint on Omni's staff to notify Portfolio of the complaint.

However, again, on a Rule 12(c) motion, all of the plaintiff's allegations are assumed to be true, and all possible inferences are drawn in her favor. See *Tamayo*, 526 F.3d at 1081. While Plaintiff does not claim to have ever complained directly to Portfolio's management, she does plead facts that, taken as true, give rise to an inference that Portfolio had notice of her complaint. Specifically, Plaintiff alleges that members of Omni's management staff at the hotel who were aware of the complaint, including general manager Paul Lauritzen and executive housekeeper Bill Smith, knew of the complaint and continued working at the hotel as members of Portfolio's management team.[7] An employer can be put on notice of a harassment complaint through a "point person" or from "someone that 'the complainant reasonably believed was authorized to receive and forward (or respond to) a complaint of harassment,'" such as a department head. *Parkins*, 163 F.3d at 1035 (quoting *Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir. 1997)). Since Plaintiff reasonably could have believed that a general manager and executive housekeeper were authorized to receive a complaint on behalf of Portfolio, it is

---

[7] Sallis has also alleged that Munoz served as Portfolio's human resources manager. Compl., Ex. A-4. While Portfolio presents evidence that Munoz continued to be employed by Omni after the hotel transfer and was never employed by Portfolio, this is a factual dispute that the Court may not resolve on a 12(c) motion. Furthermore, the Court notes that by Portfolio's own statement, the meeting at which Plaintiff was fired was "spearheaded by Omni Human Resources Director Elvia Munoz." Def. Rep. at 2. By this fact, it seems plausible that Munoz may have been working in some capacity for Portfolio.

plausible that Portfolio had notice of the complaint.[8]

Portfolio also argues that Plaintiff cannot establish the requisite causal link between her harassment complaint and her discharge because Portfolio fired Plaintiff for legitimate reasons. Portfolio contends that Plaintiff was fired because she left work early without permission on December 23, 2005, in violation of company policy. Portfolio's contention is squarely contrary to Plaintiff's allegation that she had permission to leave work early. Portfolio attempts to bolster its claim with evidence, including a timesheet from the Ambassador East Hotel and a letter from one of Plaintiff's co-workers about the incident. Once again, however, on a 12(c) motion to dismiss, the Court may not consider evidence, nor can it resolve factual disputes. Instead, the Court takes Plaintiff's allegations as true and determines whether they plausibly entitle her to relief. Plaintiff alleges that she was fired without a legitimate reason. She alleges that the true cause for her discharge was retaliation for her harassment claim, saying that "[Portfolio's] adverse actions have followed my protected activity within such a period of time as to raise an inference of retaliatory motivation." Compl., Ex A-5. Indeed, the facts alleged indicate that Plaintiff was fired approximately five weeks after she made her harassment complaint,[9] at a meeting attended by at least two Portfolio managers who were aware of her complaint.

The Court finds that these allegations are sufficient to survive a Rule 12(c) motion. "When an adverse employment action follows on the close heels of protected expression and the

---

[8] Furthermore, it is perhaps unreasonable to require Plaintiff to repeat her complaint to individuals she believed were already aware of it when the corporate transfer did not significantly affect the personnel at the hotel.

[9] Plaintiff's Answer Brief states that she "was fired a mere seven (7) days after filing her complaint of sexual harassment on December 23, 2005." Pl. Ans. at 8. However, according to Plaintiff's original EEOC charge, she complained of harassment on November 23, 2005. Compl., Ex. A-2. The November 23, 2005 date is consistent with other statements made by Plaintiff in her pleadings. See Pl. Ans. at 3. Therefore, the Court construes November 23, 2005, as the correct date.

plaintiff can show the person who decided to impose the adverse action knew of the protected conduct, the causation element [of a retaliatory discharge claim] is typically satisfied." *Culver,* 416 F.3d 540, 546 (quoting *Lalvani v. Cook County, Ill.*, 269 F.3d 785, 790 (7th Cir. 2001)) (denying summary judgment for employer in Title VII claim); see also *Phelan v. Cook County*, 463 F.3d 773, 788 (7th Cir. 2006) (holding that a time period of approximately two to three months between protected activity and discharge was "sufficiently short to create a triable issue of fact" as to whether discharge was retaliatory).

Plaintiff's allegations, taken as true, suggest that she was unlawfully discharged from her job as a housekeeper at the Ambassador East hotel in retaliation for her sexual harassment complaint. Portfolio could have had notice of her harassment complaint, because several of Omni's hotel managers who were aware of the complaint continued as managers for Portfolio after the Ambassador East was sold. Furthermore, Plaintiff's discharge occurred in sufficiently close temporal proximity to her harassment complaint so as to raise an inference of causation. Therefore, Portfolio's Rule 12(c) motion for judgment on the pleadings is denied as to Plaintiff's retaliation claim.

## III.    Portfolio's Claim Against Omni

### A.      Factual Background

Third-Party Plaintiff Portfolio alleges the following facts, which are assumed to be true for the purposes of this Rule 12(c) motion. On October 19, 2005,[10] Portfolio and Omni entered into a purchase and sales agreement for the transfer of the Ambassador East Hotel from Omni to Portfolio. The agreement included an indemnification clause that provided that Omni, as the seller, would indemnify and hold harmless Portfolio, as the buyer, from "all claims, costs,

---

[10]  The contract is dated October 19, 2005, so the Court construes as erroneous the statement in Portfolio's complaint that the parties entered the contract on December 15, 2005. Def. Mem., Ex. 1.

penalties, damages, losses, liabilities and expenses (including attorney's fees) that are incurred by [Omni] before the closing date" including those arising from "all matters relating to the ownership, management or operation of the [Ambassador East Hotel] before the closing date." Third-Party Def. Mem., Ex. 1 at 2. The closing date was December 15, 2005. Plaintiff was employed by Omni until December 15, 2005, and by Portfolio from December 15 until December 30, 2005, when she was terminated. Plaintiff filed suit against Portfolio on May 24, 2007, alleging that she was sexually harassed on November 23, 2005, and that she was retaliated against for complaining of sexual harassment on December 30, 2005. Plaintiff's lawsuit seeks damages for the alleged discriminatory conduct. Portfolio requested indemnification from Omni regarding the lawsuit, and Omni refused. As a result, Portfolio has incurred damages, including attorney's fees, in its defense against Plaintiff's lawsuit. On November 20, 2007, Portfolio filed its third-party complaint against Third-Party Defendant Omni, alleging breach of the indemnification agreement and seeking indemnification against Plaintiff's lawsuit and the amount of defense costs incurred defending against the lawsuit.

**B.      Discussion**

Omni argues that it has no obligation to indemnify Portfolio against any damages arising from Plaintiff's lawsuit because (1) Plaintiff has not sued Portfolio for any acts arising from hotel management before December 15, 2005; (2) Plaintiff cannot sue Portfolio for any acts arising from hotel management before December 15, 2005, because Portfolio was not her employer during this time frame; and (3) Omni is not obligated to indemnify Portfolio against Plaintiff's lawsuit for acts arising from hotel management after December 15, 2005.

*1.      Scope of Plaintiff's Lawsuit*

Omni asserts that "an examination of Sallis's original complaint reveals that she has not

sued Portfolio for any acts of Omni occurring prior to December 15, 2005." Third Party Def. Mem. at 3. Specifically, Omni contends that paragraph four of Plaintiff's complaint indicates that her claims pertain to events that occurred "[o]n or about December 30, 2005." Third Party Def. Mem., Ex. 2. Omni also argues that, although events that occurred prior to December 15, 2005, are referenced in the EEOC charge attached to Plaintiff's complaint, "the attachment of Sallis' EEOC charge does not alter the nature of her complaint." Third Party Def. Mem. at 3.

However, Omni's argument is not well taken, because it disregards the proposition (noted above in part I) that attachments to the complaint are considered part of the pleadings. See *Thompson*, 300 F.3d at 753. Paragraph four of Plaintiff's complaint incorporates the EEOC charge by reference, stating that Plaintiff's discrimination claim is "more fully set forth in her attached charge of discrimination, Ex. A." Def. Mem., Ex. 2. Plaintiff's EEOC charge, at section I, includes a claim for hostile work environment sexual harassment related to events beginning on November 23, 2005. Furthermore, paragraph one of Plaintiff's complaint states that "this is a claim for relief under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §§ 2000e-2 and 3." While section 2000e-3 proscribes retaliation, section 2000e-2 proscribes discrimination based on sex, which includes hostile work environment sexual harassment. Therefore, Plaintiff's complaint plausibly includes a hostile work environment claim.

Omni also argues that Plaintiff's supporting brief "makes clear that Sallis' claim is based upon her alleged retaliatory discharge, not for any hypothetical damages she may have suffered between November 23, 2005 and December 15, 2005." Def. Rep. at 2. Again, Omni's motion overlooks pertinent materials in the pleadings. Specifically, Plaintiff states in her supporting brief that "plaintiff's complaint seeks relief for gender discrimination (sexual harassment) *and* under the anti-retaliation proscription of Title VII * * * * When the sexual harassment occurred,

17

the hotel was owned by Omni." Pl. Ans. at 1 (emphasis added). This statement clearly indicates that Plaintiff presents two claims, including one for sexual harassment that occurred prior to December 15, 2005. Plaintiff's claims are drawn inartfully, but a plaintiff's civil rights claims must be liberally construed at the pleadings stage. See *Swierkiewicz*, 534 U.S. 506, 514 (2002). As Portfolio has pleaded in its third-party complaint, and as should be clear from the Court's discussion of Plaintiff's claims in part II above, it is possible to construe a claim for sexual harassment occurring prior to December 15, 2005.

### 2.    *Portfolio's Liability for Sexual Harassment*

Omni also asserts that, even if Plaintiff did sue Portfolio for sexual harassment that occurred before December 15, 2005, as a matter of law, Portfolio cannot be liable for those acts, because Omni, not Portfolio, was Plaintiff's employer at the time. Therefore, Omni argues, Plaintiff's lawsuit presents no possible liability for which Omni would be obligated to indemnify Portfolio. However, as noted in the discussion of Plaintiff's hostile work environment claim in part II above, Plaintiff's complaint could be construed in a manner that Portfolio could be liable for the unlawful acts of Omni through successor liability. Again, a purchaser of the assets of a predecessor's business may be liable for the predecessor's employment discrimination when (1) the successor had notice of the employment discrimination claim before the acquisition; and (2) there is substantial continuity of business operations before and after the sale. *E.E.O.C. v. G-K-G, Inc.*, 39 F.3d at 747-48. Whether these conditions were met in this case is a question of fact that is not appropriately resolved at the pleadings stage. Because Plaintiff's complaint against Portfolio for sexual harassment that occurred prior to December 15, 2005 survives, the Court cannot say that, as a matter of law, Portfolio cannot face liability for Omni's acts.

The Court cannot, at this stage, resolve factual issues regarding what specific liabilities

Portfolio has incurred or might incur as a result of Plaintiff's sexual harassment claim and whether those specific liabilities are covered by the indemnification clause. However, taking Portfolio's allegations as true, it is plausible that Portfolio is subject to liabilities relating to the management of the Ambassador East Hotel prior to December 15, 2005, and that Omni is obligated to indemnify Portfolio against these liabilities. Therefore, Omni's Rule 12(c) motion for judgment on the pleadings is denied as it relates to Portfolio's liability for Plaintiff's hostile work environment claim.

### 3.    *Portfolio's Liability for Unlawful Retaliation*

Portfolio's third-party pleadings also suggest that Omni may be obligated to indemnify Portfolio for liability that Portfolio is exposed to as a result of Plaintiff's retaliation claim.[11] Portfolio appears to advance two relevant theories in regard to Omni's obligation to indemnify Portfolio against Plaintiff's retaliation claim.

First, Portfolio appears to contend that, because Omni's Human Resource Manager, Elvia Munoz, "continued to perform human resources functions to the hotel's management team through the end of the year 2005" and "was involved in making the final decision to terminate Plaintiff," Omni may bear some liability for Plaintiff's retaliation claim. Third Party Pl. Resp. at 2-3. However, Portfolio also states that it "reimbursed Omni for a portion of her salary for this period of time." *Id.* Because it is not clear that Munoz was acting as an agent of Omni, rather than as an agent of Portfolio, when she was involved in the decision to fire Plaintiff, it is not

---

[11] Portfolio's specific allegations regarding Omni's obligation to indemnify Portfolio against Plaintiff's retaliation claim appear in its supporting brief, not in its complaint. However, since these allegations are consistent with the more general allegation in its complaint that the purchase and sale agreement between Omni and Portfolio obligates Omni to indemnify Portfolio against Plaintiff's lawsuit, the Court accepts them as part of its pleadings.

clear that Munoz's allegedly discriminatory actions could be attributed to Omni. Regardless, even if Munoz had been acting as an agent of Omni when she was involved in Plaintiff's termination, her action occurred on December 30, 2005. As Portfolio's third party complaint indicates, Omni was only obligated to indemnify Portfolio for "matters relating to the ownership, management or operation of [the Ambassador East Hotel] before the closing date." Third Party Compl. at 2. Therefore, as a matter of law, Omni is not obligated to indemnify Portfolio against liability for Munoz's hotel management activities that took place after December 15, 2005, even if discriminatory acts by Munoz could be attributed to Omni.

Portfolio also argues that it "would not have to defend [Plaintiff's retaliation claim] *but for* the sexual harassment claim that was brought to Omni's attention during [Plaintiff's] employ with Omni." *Id.* at 3. Portfolio contends that its liabilities regarding Plaintiff's retaliation claim therefore "arose from" Omni's actions prior to December 15, 2005 and are covered by the indemnification clause. See *id.*

When a plaintiff makes a claim under the retaliation provisions of Title VII, she contests the adverse employment action taken by the employer in response to her opposition of a discriminatory act such as sexual harassment, not the sexual harassment itself. See 42 U.S.C. §2000e-3. As noted in part II above, a plaintiff may bring a retaliation claim against an employer under Title VII even if no illegal sexual harassment ever actually took place. Legally, the retaliation claim is wholly separate from the underlying discriminatory act. Plaintiff's retaliation claim, therefore, only alleges liability and seeks relief for events that took place on December 30, 2005. Strictly speaking, Plaintiff's retaliation lawsuit cannot impose any liability for acts other than those that took place on December 30, 2005.

However, taking all of Portfolio's allegations as true for the purposes of this 12(c)

motion, Omni is obligated to indemnify Portfolio for liabilities "arising from" "all matters relating to the ownership, management or operation of the [Ambassador East Hotel] before [December 15, 2005]." Third Party Def. Mem., Ex. 1. Plaintiff's retaliation claim could be said to have "arisen from" a matter "relating to" the management of the hotel before December 15, 2005, because Plaintiff's lawsuit "arose from" her allegedly unlawful discharge, which "related to" the sexual harassment complaint she lodged with Omni's management on November 23, 2005, and her lawsuit arose from the discharge. While the exact intent and meaning of this contract clause is a factual issue that is inappropriate for resolution on a judgment on the pleadings, the facts alleged by Portfolio in its third-party complaint plausibly suggest that the clause could be interpreted to obligate Omni to provide at least some indemnification to Portfolio against Plaintiff's retaliation claim. Therefore, Omni's 12(c) motion for judgment on the pleadings is denied as it relates to Portfolio's liability for Plaintiff's retaliation claim.

## IV.    Conclusion

Based on the foregoing, the Court denies Portfolio's 12(c) motion for judgment on the pleadings [42] and denies Omni's 12(c) motion for judgment on the pleadings [47].


Dated:  September 25, 2008                    _____
                                              Robert M. Dow, Jr.
                                              United States District Judge